## In re HOADLEY et al.

### (District Court, S. D. New York. May 1, 1900.)

BANKRUPTCY—ASSETS—CONTINGENT REMAINDER—EXPECTANT ESTATES.

   Where property is devised by will to trustees with directions to apply the income for the benefit of a named beneficiary during her life, and at her death to divide the estate in equal portions among such of the children of the testator as may then be living, and the issue of deceased children, but with no specific devise to any child by name, none of the testator's children has any right or interest in the estate, during the lifetime of the first beneficiary, such as to be devisable or alienable under the laws of the state of New York as interpreted by its courts; and consequently, if one of such heirs is adjudged bankrupt while the life estate is still outstanding, he has no estate or interest under the will such as will vest in his trustee in bankruptcy as assets of his estate.

In Bankruptcy. On review of decision of referee in bankruptcy.

Russell & Percy, for trustee.

George Walton Green, for the bankrupts.

BROWN, District Judge. The trustee in the above matter petitioned for an order that the bankrupts, Russell H. Hoadley, Jr., and Chester C. Munroe, should transfer to him their interests in certain estates devised under the wills of Russell H. Hoadley, Sr., and Chester Clark and Sarah S. Munroe, hereinafter referred to. For the bankrupts it is claimed that neither of them had any transferable interest in the estates or any estate that could be levied upon or sold under judicial process, and none, therefore, which passes to the trustee under section 70 of the bankrupt act. The following is the opinion of the referee sustaining the bankrupts' contention:

"The provisions of the wills so far as they affect the question at issue are as follows:

"The will of Russell H. Hoadley after making a bequest to his wife of certain personal articles and household goods and of the sum of ten thousand dollars for her immediate necessities provides as follows:

"Fourth. 'All the rest, residue and remainder of my estate, both real and personal, whatsoever and wheresoever, I give, devise and bequeath unto my executors hereinafter named or to such of them as shall qualify and undertake the execution of this my will, and the survivors or survivor of them, in trust, nevertheless, and to and for the uses and purposes following, that is to say: To sell and dispose of all my real estate at public auction or by private contract at such time or times and in such manner and upon such terms as my said executors or the survivors or survivor of them shall deem proper, and to convert all my personal estate into money, to invest the net proceeds of my said real and personal estate and keep the same invested in any good securities in their discretion, and to collect and receive the interest, income and profits thereof and to pay and apply the net interest and income arising therefrom to the use of my wife Alice H. for and during her natural life. And upon the decease of my wife, I direct that my said residuary estate shall be divided by the said trustees into as many equal shares or portions as I shall have children then living and children who shall have died leaving issue surviving my wife, and I give, devise and bequeath one of said shares or portions unto each of my said children who shall survive my wife, and one of said portions or shares to the issue of any child who may have previously died leaving issue surviving my said wife, such issue of any one deceased child to take collectively the share his, her or their parent would have taken if living.'

"The will of Chester Clark, after making provision for his widow and for a life estate to his daughter Emily, proceeds as follows:

" 'Fifthly. At the decease of my daughter Emily, after making the provision for my wife, as specified in the next preceding article, I order and direct all the residue of my estate (except the homestead as hereinbefore provided for) to be converted into money and distributed among my descendants as follows, that is to say: I direct the same to be divided into as many shares as I shall have children then living, and children who have died leaving issue, each then living child of mine taking equal shares thereof, and the issue of a deceased child taking by representation the share the parent would have taken if living.

" 'Sixthly. In case my wife survives my daughter Emily, then at the decease of my wife all the property invested for her, including the homestead or the proceeds thereof, shall be equally divided into as many shares as I shall have children then living, and children who shall have died leaving issue, that is to say: Each then living child of mine taking one equal share, and the issue of a deceased child taking by representation the share the parent would have taken if living.'

"The widow of Chester Clark died prior to 1898. Emily Vernon Clark still survives. Sarah S. Munroe, a daughter of Chester Clark and the mother of Chester C. Munroe, died prior to November 28, 1898, leaving four children.

"The will of Sarah S. Munroe, the mother of Chester C. Munroe, after making certain provisions for her husband and for her daughter Sarah, provides:

" '(7) I direct my executors on the death of both my said husband and my daughter Sarah, to divide, transfer and convey all my estate, real and personal, as follows, viz.: All the estate, real and personal, in which I have by the second clause hereof, given my husband a life estate, including herein all the proceeds arising from the sale of any part thereof, to be divided equally among all my children then living and the issue of any deceased child or children, the issue of any deceased child to receive the share which such deceased child would take if alive, and all the rest and residue of my estate, real and personal, to be divided equally among my daughters then living and the issue of any deceased daughter or daughters, the issue of any deceased daughter to receive the share which such daughter would take if alive.'

"It will be noticed as before remarked that the provisions of all of these wills are sufficiently alike to be considered together under one general rule of law.

"It seems to me that there can be no question but that under the provisions of the Revised Statutes, the estates taken by the bankrupts under these wills are vested remainders. Clearly there is in each case a person in being who would take the estate on the determination of the life estate, but the question here involved does not, in my opinion, necessarily depend upon the bare ques-

tion of whether the estates of the bankrupts fulfill the statutory definition of vested remainders; they are vested in interest but not vested in possession, and are subject to be devested by the happening of the contingency mentioned in the several wills at any time before the property is divisible as therein provided.

"It will be noticed that in none of the wills is there a direct gift to either of the bankrupts by name or description alone, but the devise is to a class to which the bankrupts may or may not belong at the time of the absolute vesting of the gift, that depends upon their surviving the present life tenant. If Russell H. Hoadley dies before the decease of his mother, the life tenant, his estate is at once devested and becomes vested in his issue, if any, and the same rule applies to Chester C. Munroe.

"The clear distinction in my mind between the case at bar and that of an ordinary vested remainder where property is left to one for life, and remainder to another in fee, is that in the case at bar futurity attaches to the gift and there can be no estate until the time arrives for the gift to vest, whereas in the latter case the estate vests completely and only the enjoyment of it is postponed.

"This doctrine has been held by the appellate division and the court of appeals in a continuous line of decisions for a great number of years, and has never been questioned by those courts in any case where the identical question has been presented. Geisse v. Bunce, 23 App. Div. 289, 48 N. Y. Supp. 249; Teed v. Morton, 60 N. Y. 506; Warner v. Durant, 76 N. Y. 133; Delaney v. McCormack, 88 N. Y. 174; Smith v. Edwards, Id. 92; Shipman v. Rollins, 98 N. Y. 311; Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184; In re Baer, 147 N. Y. 348. 41 N. E. 702; Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388; In re Tienken, 131 N. Y. 391, 30 N. E. 109; Bisson v. Railroad Co., 143 N. Y. 125, 38 N. E. 104; In re Smith, 131 N. Y. 239, 30 N. E. 130.

"Some of these cases involved exactly the same point as the case at bar, while in others, the facts are somewhat different and the exact point here at issue was not the paramount question, but in every one of them the language of the court is so strong and pointed as to have all the weight of authority. I quote only from a few of them:

"The case of Delafield v. Shipman. supra, is particularly in point.

"The will of Richard Delafield, deceased, gave his residuary estate to trustees in trust to apply and manage the same for the benefit of his wife and six children. and upon the death of the widow to make an equal division of the trust estate between his children then living, the issue of a deceased child to receive the share the parent would have received if living.

"One of the children died during the lifetime of the widow, leaving a husband and one child, and leaving a will by which she gave all her property to her husband for life, and remainder to her child.

"Held that the testator's children took no vested interest in the corpus of the trust estate until the death of the widow.

"Earl, J., says at page 467, 103 N. Y., and page 185, 9 N. E.: 'We agree with the court below, and with the contention of the respondents, that the corpus of the residuary estate did not during the life of the widow vest in the testator's children, and for this conclusion the cases of Warner v. Durant, 76 N. Y. 133, Smith v. Edwards, 88 N. Y. 92, and Shipman v. Rollins, 98 N. Y. 311 are ample authority. The whole income is not given to the children during the life of the widow, and during her life the estate is vested in the trustees. There is no direct gift to the children, but simply a direction for a division among them after the death of the widow. In Warner v. Durant, Folger, J., said: "Where there is no gift, but a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting will not take place until that time arrives." In Smith v. Edwards, Finch, J., said that "it has been often held that if futurity is annexed to the substance of the gift, the vesting is suspended," and that "when the only gift is in the direction to pay at a future time, the case is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift." These general rules must control the construction of this will, as there is nothing in its context or general language which renders them inapplicable. This construction, too, is in harmony with the presumed intention of the tes-

tator. He vested the whole estate in the trustee during the life of his widow, and during that time evidently intended that it should remain there, and not be subject to the disposal of his children, or liable to be seized by their creditors; and after the death of his widow he gave it, not to the children living at his death, but to the children and descendants of children, deceased, living at her death.'

"Geisse v. Bunce, supra: Mr. Justice Barrett, delivering the opinion, says at pages 291, 292, 23 App. Div., and page 250, 48 N. Y. Supp.: 'There is no direct gift to these latter individuals, and it is well settled that, where the only gift or devise of property is contained in the implication resulting from a direction to pay or divide at a future time, futurity is annexed to the substance of the gift, and no title or interest vests until the arrival of the specified period. This doctrine plainly applies here to each of the three individuals named in the direction to pay and divide. It applies with additional force to the one-quarter payable to the children of Chauncey D. Bunce, for there another rule reinforces the first, namely, that where the direction is to pay to and divide among a class, only those persons who are members of the class at the date fixed for distribution take, and their interests do not vest until that period. Ample authority for both rules will be found in the following cases: Delaney v. McCormack, 88 N. Y. 174; Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184; In re Baer, 147 N. Y. 348, 41 N. E. 702. In order that the interest of the beneficiary may vest at once there must be, in addition to the direction to the trustee, either express words of gift, or circumstances from which may be fairly inferred an intention to appropriate at once the subject of the gift to the use of the beneficiary although the full enjoyment thereof is postponed to a later date.. Warner v. Durant, 76 N. Y. 133; Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388; In re Tienken, 131 N. Y. 391, 30 N. E. 109.'

"The language of Finch, J., in Delaney v. McCormack, supra, is particularly applicable:

" 'But there is no gift to the next of kin, and no language importing such gift, except in the direction to convert the real estate into money and then make distribution; and in such case the rule is settled that time is annexed to the substance of the gift and the vesting is postponed. Much more is that true where the gift is only to vest upon the happening of a future contingency, until the occurrence of which it is uncertain whether a gift will be made at all. Warner v. Durant, 76 N. Y. 136; Leake v. Robinson, 2 Mer. 387; Smith v. Edwards, 88 N. Y. 92. Here a future condition or contingency attached to the substance of the gift. It was conditioned upon the death of James without having had lawful issue, so that the vesting was plainly postponed and the gift was future. There is the further and important fact that at the death of James the land was to be converted into personalty and be distributed as such, and the very subject of the gift was not to come into existence until the prescribed contingency. Vincent v. Newhouse, 83 N. Y. 511; Hoghton v. Whitgreave, 1 Jac. & W. 146. The case, therefore, falls within the rule that where the gift is money, and the direction for the conversion absolute, the legacy given to a class of persons vests in those who answer the description and are capable of taking at the time of distribution. Teed v. Morton, 60 N. Y. 506.'

"The same judge says in Smith v. Edwards, 88 N. Y., at pages 103 and 104: " 'It has been often held, that if futurity is annexed to the substance of the gift, the vesting is suspended; but where the gift is absolute and the time of payment only is postponed, the gift is not suspended, but vests at once. Critically examined, this is little more than stating the same problem in another form of words, and amounts practically to saying that if the gift is future, it is not present; but nevertheless it has been useful in drawing sharply the distinction between a gift presently given, and its deferred payment. 1 Jarm. Wills, 759; Warner v. Durant, 76 N. Y. 136. Out of that distinction has grown a rule which bears directly upon the present case, that where the only gift is in the direction to pay or distribute at a future time, the case is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift. 1 Jarm. Wills, 762. The cases cited as holding this doctrine were instances in which the

gift was conditioned upon an event to be determined in the future. Leake v Robinson, 2 Mer. 363; Ford v. Rawlins, 1 Sim. & S. 328; Taylor v. Bacon, 8 Sim. 100. In such cases, until the happening of the future event, it must necessarily remain uncertain whether a gift would exist at all, and that could not be said to have vested which was not certainly given.'

"The other cases cited are quite as authoritative as those quoted from, but it is unnecessary to elaborate the decisions further, as I consider them fatal to the contention of the trustee in this proceeding.

"I am of opinion that the bankrupts took no property under the wills referred to which can be reached for the payment of their debts or which can be taken by the trustee in this proceeding.

"It follows that the motion must be denied.

"Dated, Manhattan, Mch. 23/00.                    Ernest Hall, Referee."

After considerable examination and no little doubt, I am inclined to concur with the conclusion of the learned referee, upon the ground, that according to the construction given to the state statutes by the highest court of the state, which is binding upon the federal courts (Leffingwell v. Warren, 2 Black, 599, 603, 17 L. Ed. 261; City of Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012, 34 L. Ed. 260; Forsyth v. City of Hammond, 166 U. S. 506, 519, 17 Sup. Ct. 665, 41 L. Ed. 1095), and according to its construction of devises like the present, the bankrupts, during the life of the beneficiary for life, take no vested interest or estate under the wills in question. If they were vested with any present right or interest at all, it would constitute I think a future expectant estate, which by the state statute is expressly made alienable. On this ground in the cases of Moore v. Littel, 41 N. Y. 66, 84, 98; Ham v. Van Orden, 84 N. Y. 257; Hennessy v. Patterson, 85 N. Y. 91; and Griffin v. Shepard, 124 N. Y. 70, 26 N. E. 339, such expectant estates based upon a present interest were held to be alienable, even though treated as contingent remainders.

The present case, however, differs from those (except Moore v. Littel, where the remainder was a present gift) in the fact that here the bankrupts are not personally named as devisees in either of the wills and that they can take only as members of a special and limited class of children living at the death of the life tenants; and as the latter are still living, it is at present wholly uncertain whether the bankrupts will ever be in the class of persons among whom the estates are to be divided on the death of the beneficiaries for life. The contingency being as to the persons who will take and not as to the event merely, a contingent remainder of that kind, it is said, not being vested in right or interest in the person, is inalienable. Chap. Susp. 49, 50. In the other cases last cited the persons to take ultimately were named in the will; there was no uncertainty as to the person, but only as to the event that might defeat their right. They were regarded therefore as having a present right or interest in a future expectant estate, which by the state statute is devisable and alienable.

Besides the above considerations, the cases quoted by the referee, confirmed also by the still later cases of In re Brown, 154 N. Y. 313, 48 N. E. 537, Paget v. Melcher, 156 N. Y. 399, 51 N. E. 24, and Clark v. Cammann, 160 N. Y. 315, 54 N. E. 709, show that where, as under these wills, the testator directs a division of the estate

into shares upon the termination of the life tenancy, and a gift to his children then living, or in the case of the death of either then to the lawful issue of any deceased child, the intent of the testator, if nothing else indicates the contrary, will be construed to be to convey to the future beneficiaries no estate or interest of any kind until the termination of the life estate; or as stated by Earl, J., in Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184:

"He [the testator] vested the whole estate in the trustee during the life of his widow, and during that time evidently intended that it should remain there, and not be subject to the disposal of his children, or to be seized by their creditors; and after the death of his widow he gave it not to the children living at his death, but to the children and descendants of children deceased, living at her death." Page 468, 103 N. Y., and page 185, 9 N. E.

And again in Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811, Andrews, C. J., explaining the case of Townshend v. Frommer, 125 N. Y. 446, 26 N. E. 805, observes:

"That case arose under a trust deed, whereby the grantor retained the beneficial use of the property for life, and which contained directions for the disposition of the fee after her death, to persons who were not ascertainable until the happening of that event. The intention of the grantor, deduced by the court from the transaction, was to postpone the accruing of any future interests until that event happened."

In such cases, therefore, it is held that there is no alienable or descendible interest while the precedent life estate is outstanding.

The explanation of some apparent discrepancies in the many decisions on this subject, is I think to be found in the endeavor to adopt that construction of the will which will most nearly carry out the apparent intent of the testator and make that intent controlling, so far as is possible consistently with the established rules of law. This is well illustrated in the two cases of Clark v. Cammann and In re Brown, above cited, in one of which an interest was held vested and descendible during the life estate, and in the other not.

The language of both the wills here in question is precisely like that which according to the later cases in the state court of appeals vests no right or interest in the children until the termination of the life estate; and this, as I understand, is what is intended by the somewhat modern phrase so frequently applied in the later reports to cases like the present, that "futurity is annexed to the substance of the gift."

Upon the view, therefore, that the testators here intended no present gift of any estate or interest, in expectancy or otherwise, to pass to either of the bankrupts, and none until the death of the beneficiaries for life and then only to persons then living, that until then the trustees under the will held the entire estate, and that until then the bankrupts have no interest capable of being devised or aliened, the report is confirmed, and the application of the trustee in bankruptcy is denied. 1 Thomas, Estates, 250, 341; 2 Thomas, Estates, 1717–1719.